ASOCIACION CIVICO RECREATIVA CAPARRA HILLS, Y OTROS
Demandantes-Recurrentes

v.

WILLIAM MEVS POR SI, YOLANDA KOFF, Y OTROS
Demandados-Recurridos

Núm. KLCE-95-00169

San Juan, Puerto Rico, a 26 de junio de 1995

Panel integrado por su presidenta, la Juez Fiol Matta,
la Juez Rodríguez de Oronoz, y el Juez Gierbolini

Gierbolini, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

En el recurso de *certiorari* instado en el caso de epígrafe la parte demandante Asociación Cívico Recreativa Caparra Hills y otros, solicitan la revisión de una Orden emitida el 22 de febrero de 1995 y cuya copia de la notificación fue archivada en autos el 28 de febrero de 1995. Mediante ésta, el tribunal de instancia denegó una petición de *injunction* presentada por la parte demandante. El 30 de marzo de 1995 la parte demandante acude ante este foro mediante recurso de *certiorari*.

Luego de un cuidadoso análisis del recurso instado y a la luz de la totalidad de los documentos que obran en autos y el derecho aplicable, estamos en posición de resolver.

### I

Este caso versa sobre la existencia de unas condiciones restrictivas en propiedades que forman parte de la Urbanización Caparra Hills ubicada en el pueblo de Guaynabo. El señor William Mevs es propietario de una casa en la urbanización y allá para el verano de 1994 comenzó a anunciar la apertura de un campamento de verano y una academia pre-escolar en su residencia. Otros vecinos de la urbanización, agrupados bajo el nombre de Asociación Cívico Recreativa Caparra Hills [la Asociación] presentaron oposición a la proyectada academia, indicándole a Mevs que todas las residencias de la Urbanización, incluso la de éste, están gravadas por condiciones restrictivas que prohiben el tipo de uso que Mevs tenía planeado.

Ante la insistencia de Mevs en operar una academia en su propiedad de Caparra Hills, el 12 de julio de 1994 la Asociación presentó una Petición de *Injunction* Permanente y una Solicitud de *Injunction* Preliminar en el Tribunal de Primera Instancia, Sala Superior de Bayamón, donde solicita, en esencia, que se prohiba a Mevs violentar las condiciones restrictivas. Oportunamente Mevs contestó la demanda. Este sostiene que no todos los solares destinados al área residencial están gravados y que sobre su propiedad en particular no existe condición restrictiva alguna. En la alternativa, argumenta que de haber existido las condiciones restrictivas, éstas se extinguieron.

Tras la celebración de una vista informal en cámara, el tribunal de instancia emitió una Acta y Orden el 22 de agosto de 1994, donde, entre otras cosas, ordenó la consolidación del *injunction* preliminar y permanente, señalando *"vista evidenciaria"* para el 14 de septiembre siguiente.

El 6 de septiembre de 1994 Mevs presentó una Moción de Sentencia Sumaria El 14 de septiembre se realizó la vista consolidada de *injunction* preliminar y permanente. En la minuta de dicha vista, además de esbozar las teorías respectivas de cada parte, respecto al trámite procesal a seguir en el caso dispuso lo siguiente:

*"Tratándose éste de un caso de injunction, el Tribunal expresó que una vez reciba la oposición de la parte demandante a la moción de sentencia sumaria y entienda que es*

*necesario la celebración de una vista, así la coordinará. Por otro lado, de entender que puede disponer sin necesidad de la celebración de una vista, así lo hará.*

*De continuar el caso por la vía ordinaria, manifestó el Tribunal, se considerará que se trata de un caso de injunction, por lo que se limitará el término para el descubrimiento de prueba y se coordinará el señalamiento de Conferencia con Antelación al Juicio lo antes posible."* ■ Tras la presentación de varios escritos atendidos por el tribunal, el 9 de diciembre de 1994 la Asociación presentó una Moción Acompañando todas las Certificaciones Registrales de todos los Solares que Componen la Urbanización Caparra Hills. En este escrito la Asociación vuelve a argumentar su posición, esta vez a la luz de la voluminosa información recogida en todas las certificaciones registrales de los solares de la urbanización. Al final y como parte de la súplica de la moción, la Asociación solicita se declare con lugar su petición de *injunction*. A la moción en cuestión Mevs expresó oposición mediante escrito de fecha de 19 de diciembre de 1994, donde solicitó además la desestimación de la petición de *injunction*.

Finalmente, el 22 de febrero de 1995, el tribunal de instancia emitió varias órdenes donde declaró No Ha Lugar la solicitud de sentencia sumaria de Mevs, al igual que su moción del 19 de diciembre de 1994 donde pedía la desestimación de la petición de *injunction*. Respecto a la moción de la Asociación acompañando las certificaciones registrales, el tribunal se dio por enterado, pero a la súplica solicitando emitir el *injunction*, declaró un No Ha Lugar. Por último, en esa misma fecha emitió la Orden de Señalamiento de Conferencia con Antelación al Juicio, señalando la misma para el 7 de junio de 1995. Del No Ha Lugar a la petición de *injunction* acude en revisión a este foro la Asociación.

La Asociación indica que el Tribunal de Instancia erró al declarar Sin Lugar el *Injunction* por razón de tener dudas sobre la existencia de las condiciones restrictivas aun después de haber provisto la parte demandante todas las certificaciones registrales que lo demuestran. Además, señaló que erró el tribunal al convertir el procedimiento en uno ordinario aún cuando sometió prueba indicativa de que Mevs ha continuado realizando gestiones que causarán un daño irreparable a la parte demandante.

En 28 de abril de 1995 este Tribunal emitió la siguiente Orden:

*"Examinado el recurso presentado se le conceden 10 días a la parte apelada para que muestre causa por la cual no se debe revocar la resolución emitida y devolver el expediente al tribunal de instancia para que se lleve a cabo de forma inmediata la vista del recurso extraordinario de Injunction Permanente."*

Mevs compareció y mediante Moción en Cumplimiento de Orden y Desestimación sostiene ante nos que el trámite de este caso supone un proceso de descubrimiento de prueba que resultaría imposible de realizar si se celebra una vista inmediata como intima la Orden. Por dicha razón expresa su oposición a la celebración de una vista de tal naturaleza, además de invitar a este foro a desestimar el recurso de *certiorari*■

## II

El *injunction* es una orden judicial la cual, ya sea en su carácter reparador o preventivo, prohibe o compele a una persona la realización de determinada conducta, evitando así el perjuicio a los derechos de otra. Artículo 675 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sección 3521 (1990). Véase, *Central Altagracia vs. Otero et al.,* 13 D.P.R. 111 (1907); y *APPR vs. Tribunal Superior,* 103 D.P.R. 903 (1975). Aunque el Código de Enjuiciamiento Civil define los contornos del recurso, 32 L.P.R.A. secciones 3521-33 (1990), y existe abundante jurisprudencia interpretativa de estas disposiciones, al día de hoy el recurso de *injunction* está gobernado por el procedimiento dispuesto por la Regla 57 de las de

Procedimiento Civil, 32 L.P.R.A. Ap.III R.57 (1983). Véase, Héctor A. Colón Cruz, *Notas sobre Recursos Extraordinarios, Certiorari, Injunction, Mandamus.* Segunda Parte, 42 Rev. Col. Ab. P.R. 445, 464 (1981). Las demás reglas son de aplicación de forma supletoria. *Corujo Collazo vs. Viera Martínez,* 111 D.P.R. 552 (1981).

Aunque comúnmente hablemos del recurso extraordinario de *injunction*, en realidad existen tres recursos diferentes que una parte promovente puede presentar en el tribunal. Está en primer lugar el entredicho provisional, el cual posee una naturaleza más extraordinaria pues la premura de la ocurrencia de un daño irreparable o la continuación del existente puede dar pie a que el mandamiento judicial sea expedido sin necesidad de que el tribunal oiga a la otra parte. Esto, claro está, exige la mayor discreción posible por parte del magistrado ante quien se presenta la solicitud. Cfr. *Arrarás vs. Tribunal Superior,* 100 D.P.R. 379 (1972). En segundo lugar está el recurso más utilizado, el *injunction* preliminar. Este puede ser emitido en cualquier momento del pleito y lo caracteriza la pronta celebración de una vista donde las partes argumentan en torno a la procedencia del recurso. *Cobos Licia vs. Dejean Packing Co., Inc.,* 124 D.P.R. 897, 902 (1989). Al tribunal considerar un injunction preliminar debe utilizar una serie de criterios que ya el Tribunal Supremo ha esbozado en repetidas ocasiones. ▮ Véase al respecto, *Municipio de Ponce vs. Rosselló González,* **94 J.T.S. 112** y *PRTC vs. Tribunal Superior,* 103 D.P.R. 200 (1975). En tercer lugar, y por último, está el *injunction* permanente el cual es atendido por el tribunal siguiendo los trámites de un juicio ordinario. *Díaz vs. Vázquez,* 19 D.P.R. 1155 (1913). En este caso el tribunal no considera la expedición de un mandamiento provisional, sino que ve el juicio en sus méritos.

Aunque, como ya apuntáramos, la prontitud con que debe ser atendido el *injunction* es característica peculiar del entredicho provisional y del *injunction* preliminar, visto en su carácter general el *injunction* es un recurso cuyo trámite siempre requiere particular urgencia de parte del tribunal. En tal sentido, véase las expresiones del Tribunal Supremo en *Peña vs. Federación de Esgrima de P.R.*, 108 D.P.R. 147, 154 (1978):

*"El remedio extraordinario de injunction se caracteriza por su perentoriedad, por su acción dirigida a evitar un daño inminente o a restablecer el régimen de ley conculcado por conducta opresiva, ilegal o violenta del trangresor del orden jurídico. Su eficacia descansa en su naturaleza sumaria y en su pronta ejecución[.]"*

Cfr. *Corujo Collazo vs. Viera Martínez,* 111 D.P.R. a la página 556.

Sobre el *injunction* cabe destacar en especial que es el remedio adecuado para impedir violaciones a las limitaciones impuestas por condiciones restrictivas en una propiedad, tal como plantea el caso de autos. Entre la abudante jurisprudencia, véanse *Asoc. vs. Villa Caparra vs. Iglesia Católica,* 117 D.P.R. 346, 353-54 (1986); *Sands vs. Ext. Sagrado Corazón, Inc.,* 103 D.P.R. 826 (1975); *Colón vs. San Patricio Corporation,* 81 D.P.R. 242 (1959); *Lawton vs. Rodríguez Rivera,* 35 D.P.R. 487, 500 (1926) (en reconsideración) y *Glines et al. vs. Matta et al.,* 19 D.P.R. 409 (1913).

A la luz de los principios antes expuestos, examinemos la situación de autos.

### III

Aunque el escrito inicial de la Asociación fue titulado Petición de *Injunction*, trató en realidad de una petición de *injunction* preliminar, *injunction* permanente o sentencia declaratoria. ▮ En este caso en particular el tribunal de instancia ordenó la consolidación de la vista de *injunction* preliminar con la de *injunction* permanente, proceder permitido por la Regla 57.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 57.1 (1983). Al celebrar la susodicha vista y según se desprende de la minuta, el tribunal de instancia manifesto que de continuar el caso por la vía ordinaria, consideraría que se trataba de un caso de *injunction*, por

lo que limitaría el término para el descubrimiento de prueba y la Conferencia con Antelación al Juicio sería señalada lo antes posible. De tal modo, al tribunal denegar la solicitud de sentencia sumaria de Mevs y denegar, además, la solicitud de la Asociación para que emitiera el *injunction* (incluida en su moción del 9 de diciembre de 1994) convirtió en uno ordinario el trámite del caso. La cuestión medular resulta ser, qué consecuencias tiene lo anterior en términos del remedio que solicita la Asociación.

Una vez examinado lo acontecido, debemos concluir que la Orden del 22 de febrero de 1995 que declara No Ha Lugar la petición de *injunction* reiterada por la Asociación en su escrito de 9 de diciembre de 1994, en realidad tuvo el efecto de denegar el *injunction* preliminar. Esto es compatible con las expresiones hechas por el tribunal en las vistas previamente celebradas y con el hecho de haber declarado también sin lugar el 22 de febrero de 1995 la moción de Mevs solicitando la desestimación de la petición de *injunction*. En su discreción el tribunal entendió que la solicitud de Sentencia Sumaria no procedía y que resultaba necesario atender la controversia en sus méritos. A su vez, denegó la solicitud de *injunction* preliminar pues la denegatoria de éste no prejuzga necesariamente la concesión o denegación del permanente. *Cabassa vs. Rivera*, 72 D.P.R. 90, 92 (1951).

El segundo planteamiento que hace la Asociación ante este foro es que al convertir su acción en una ordinaria, el tribunal de instancia desatendió la posibilidad de que la parte demandante sufriera un daño irreparable. Aunque es cierto que el *injunction* permanente --como el pendiente ante el tribunal de instancia en este caso-- es tramitado como un juicio ordinario y conlleva el consabido descubrimiento de prueba, su naturaleza sumaria y perentoria no desaparece. En atención a ésto es que debemos considerar el efecto de la Orden del 22 de febrero de 1995.

La particularidad de este caso radica en que Mevs quiere celebrar campamentos de verano y ofrecer servicios educativos a niños a través de la academia. Con tal propósito y estando pendiente este pleito, anuncia los servicios de la academia en los periódicos▮ De ser cierto lo alegado por la Asociación en cuanto a las condiciones restrictivas, el funcionamiento de la academia podría conllevar un daño irreparable a dicha parte.▮ Tales circunstancias hacen necesario que el tribunal de instancia, actúe con celeridad en la tramitación del pleito. La posición de Mevs expresada a través de su oposición al recurso de certiorari, elude atender esta situación, razón por la cual no la acogemos. Ordenar la celebración de una vista inmediata no conlleva suprimir las etapas procesales de un juicio ordinario, sino acelerar los procedimientos abreviando los términos según la naturaleza del caso y pautando las fechas para la celebración de vistas con miras a darle eficacia a la perentoriedad que exige el recurso. *El Municipio de Gurabo vs. Juncos Central Co.*, 18 D.P.R. 408 (1912). En este caso es necesaria una tramitación rápida e inmediata de las diversas etapas procesales.

## IV

Por los fundamentos antes expuestos, resolvemos que **SE COMETIO ERROR** al denegar el *Injunction* Preliminar solicitado por el peticionario. Según lo intimado en la Orden emitida por este Tribunal el 28 de abril de 1995, **PROCEDE** que el tribunal de instancia celebre la vista de *Injunction* Preliminar o la de éste consolidado con la de *Injunction* Permanente de este caso, en el término de 30 días a partir de la notificación de esta Orden.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General

**1.** Esta fue suplementada el 19 de septiembre con una Moción Acompañando Documentos e Información Suplementaria a Moción de Sentencia Sumaria Radicada por el Demandado.

**2.** Minuta de Vista realizada el 14 de septiembre de 1994, Apéndice del Recurso de *Certiorari*, a la pág. 111.

**3.** El fundamento para solicitar la desestimación es tan vago que no procede atender este aspecto de la moción.

**4.** En forma sucinta, los criterios son los siguientes: el grado de amenaza de daño irreparable al promovente de no concederse el remedio, el balance comparativo entre dicho daño y el que se le podría causar al demandado de concederse el remedio, la probabilidad de que el actor prevalezca en los méritos y el posible impacto sobre el interés público.

**5.** Petición de *Injunction*, Apéndice del Recurso de *Certiorari*, a la pág. 1.

**6.** Véase el anuncio publicado el 17 de enero de 1995, Apéndice del Recurso de *Certiorari*, a la pág. 219.

**7.** No pasamos por alto tampoco el problema que les causaría a los niños matriculados el que la academia deje de operar en virtud de un mandamiento judicial.